# UNITED STATES DISTRICT COURT

for the
Western District of Washington

FILED ___ LODGED
RECEIVED

JUN 28 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1478 SW Joshua Way, Port Orchard, Washington<br>98367, more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.  MJ 19-5117

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

1478 SW Joshua Way, Port Orchard, Washington 98367, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) | Receipt or Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

✓ See Affidavit of Special Agent Byron Garcia, Department of the Navy, NCIS, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

BYRON E. GARCIA, Special Agent
*Printed name and title*

⦿ The foregoing affidavit was sworn to before me and signed in my presence, or
◯ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ____06/28/2019____

_____
*Judge's signature*

City and state: ____Tacoma, Washington____

THERESA L. FRICKE, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Description of the Property to be Searched

The physical address of the SUBJECT PREMISES is 1478 Southwest Joshua Way, Port Orchard, Washington 98367. The SUBJECT PREMISES is more fully described as the property containing a one-story manufactured house painted yellow. There is a door painted red with an oval window on the north side of the house. A wooden staircase leads up to the red front door. There is a detached carport located northwest of the manufactured house. There is a blue sign with the numbers 1478 located on the southwest corner of the intersection of SW Joshua Way and the driveway. The driveway goes southwest uphill from SW Joshua Way. There are numerous trees on the SUBJECT PREMISES.

The search is to include all rooms, attics, basements, and all other parts therein, any garages, outbuildings, or storage rooms, attached or detached, and any digital device(s) found therein.

ATTACHMENTS - 1
USAO #2019R00567

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



ATTACHMENTS - 2
USAO #2019R00567

The person to be searched, EDWARD WALTER MCTIGUE, is a Caucasian male born on XX/XX/1993.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# ATTACHMENT B
## ITEMS TO BE SEIZED

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON.

1. Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2. Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3. Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4. All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5. Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6. Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7. Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8. Any non-digital recording devices and non-digital media capable of storing images and videos.

ATTACHMENTS - 4
USAO #2019R00567

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1       9.    Digital devices and/or their components, which include, but are not limited

2   to:

3       a.    Any digital devices and storage device capable of being used to

4   commit, further, or store evidence of the offense listed above, including but not limited to

5   computers, digital cameras, and smart phones;

6       b.    Any digital devices used to facilitate the transmission, creation,

7   display, encoding or storage of data, including word processing equipment, modems,

8   docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

9       c.    Any magnetic, electronic, or optical storage device capable of

10  storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

11  memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

12  camera memory cards, media cards, electronic notebooks, and personal digital assistants;

13      d.    Any documentation, operating logs and reference manuals regarding

14  the operation of the digital device or software;

15      e.    Any applications, utility programs, compilers, interpreters, and other

16  software used to facilitate direct or indirect communication with the computer hardware,

17  storage devices, or data to be searched;

18      f.    Any physical keys, encryption devices, dongles and similar physical

19  items that are necessary to gain access to the computer equipment, storage devices or

20  data; and

21      g.    Any passwords, password files, test keys, encryption codes or other

22  information necessary to access the computer equipment, storage devices or data;

23      10.    Evidence of who used, owned or controlled any seized digital device(s) at

24  the time the things described in this warrant were created, edited, or deleted, such as logs,

25  registry entries, saved user names and passwords, documents, and browsing history;

26      11.    Evidence of malware that would allow others to control any seized digital

27  device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

28

ATTACHMENTS - 5
USAO #2019R00567

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    as evidence of the presence or absence of security software designed to detect malware;
2    as well as evidence of the lack of such malware;

3        12.    Evidence of the attachment to the digital device(s) of other storage devices
4    or similar containers for electronic evidence;

5        13.    Evidence of counter-forensic programs (and associated data) that are
6    designed to eliminate data from a digital device;

7        14.    Evidence of times the digital device(s) was used;

8        15.    Any other ESI from the digital device(s) necessary to understand how the
9    digital device was used, the purpose of its use, who used it, and when.

11   **The seizure of digital devices and/or their components as set forth herein is**
     **specifically authorized by this search warrant, not only to the extent that such**
12   **digital devices constitute instrumentalities of the criminal activity described above,**
     **but also for the purpose of the conducting off-site examinations of their contents for**
13   **evidence, instrumentalities, or fruits of the aforementioned crimes.**

ATTACHMENTS - 6
USAO #2019R00567

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**AFFIDAVIT**

STATE OF WASHINGTON

COUNTY OF PIERCE

ss

I, Byron E. Garcia, being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Naval Criminal Investigative Service (NCIS), assigned to NCIS Resident Agency (NCISRA) Bangor, WA, and have been employed as a Special Agent with the NCIS since December 2018. I am authorized to conduct investigations for offenses enumerated in Title 18, United States Code, and Title 10, United States Code, also known as the Uniform Code of Military Justice (UCMJ), which affect the Department of the Navy, and specifically the United States Navy and United States Marine Corps.  My duties include, but are not limited to, investigating crimes committed on or aboard naval installations, aircraft or vessels, committed by or against Navy or Marine Corps military personnel or civilian employees, or otherwise involving Department of the Navy assets, personnel, or facilities. I conducted criminal investigations pertaining to sexual assault, domestic violence, narcotics, and child pornography.

2.      Prior to joining NCIS, I received a bachelor's degree from the John Jay College of Criminal Justice in August 2014. I honorably served in the United States Navy from June 2000 to September 2014 and attained the rank of Hospital Corpsman First Class. I deployed to Afghanistan in support of Operation Enduring Freedom (OEF), and Iraq in support of Operation Iraqi Freedom (OIF). From September 2014 to December 2018, I worked as a Special Agent in the Diplomatic Security Service (DSS), the law enforcement and security arm of the Department of State. I attended and completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and the Basic Special Agent Course (BSAC) at the

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 1
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Diplomatic Security Training Center (DSTC) in Dunn Loring, Virginia. At the DSS

2   Washington Field Office (WFO), I conducted criminal investigations, and protected the

3   Secretary of State and foreign dignitaries visiting the United States. As an Assistant

4   Regional Security Officer (ARSO) at the United States Embassy in Kabul, Afghanistan, I

5   managed security programs to protect the Embassy's people, property, and information.

6       3.    Subsequent to being hired as a Special Agent with the NCIS, I attended and

7   completed Special Agent Basic Training Program (SABTP) and Advanced Adult Sexual

8   Assault Investigations Training Program (AASAITP) at FLETC. I received training in

9   interview and interrogation techniques as well as sexual assault investigations, including

10   material regarding child sexual assault and abuse.

11       4.    I make this Affidavit in support of an application under Rule 41 of the

12   Federal Rules of Criminal Procedure for a warrant to search:

13       The premises at 1478 Southwest Joshua Way, Port Orchard, WA 98367 (the

14   "SUBJECT PREMISES"), and the person of EDWARD WALTER MCTIGUE (the

15   "SUBJECT PERSON") more fully described in Attachment A to this Affidavit, for the

16   property and items described in Attachment B to this Affidavit.

17       5.    This application seeks a warrant to search SUBJECT PREMISES and the

18   SUBJECT PERSON, and seize the items listed in Attachment B, which is attached to this

19   Affidavit and incorporated herein by reference, for evidence, fruits, and instrumentalities

20   of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography)

21   and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography).

22       6.    The facts set forth in this Affidavit are based on the following: my own

23   personal knowledge; knowledge obtained from other individuals during my participation

24   in this investigation, including other law enforcement officers; interviews of witnesses;

25   my review of records related to this investigation; communications with others who have

26   knowledge of the events and circumstances described herein; and information gained

27   through my training and experience.

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 2
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

7.   Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation. I have set forth only the facts I believe are relevant to the determination of probable cause to believe evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) will be found in the SUBJECT PREMISES and on the SUBJECT PERSON.

## KIK MESSENGER AND HASH MATCHING SYSTEM

8.   From my training and experience, I know that KIK Messenger, also called KIK, is an instant messenger application (app) for mobile devices from KIK Interactive. KIK is available free of charge on iOS, Android, and Windows Phone operating systems. Among its features, KIK permits users to engage in one-on-one or group chats, as well as share image and video files.  KIK is based and headquartered in Waterloo, Ontario, Canada.

9.   From my training and experience, I am aware that certain KIK users use KIK's features to traffic in images and videos of child pornography.  In order to combat this activity, KIK has developed an internal hash matching system called SafePhoto to identify users who are sharing child exploitation material using KIK's services.  KIK has created a database of known hash values that it has identified as hash values that correspond to files of known child exploitation material.  A hash value can be analogized to a "digital fingerprint."  The probability that any two files will have the same hash value is extremely low, meaning that when two files have the same hash value, it is virtually certain that they are identical.  For example, changing a single pixel within an image file will result in that file's having a completely different hash value.

10.   KIK has a database of approximately 92,000 known child exploitation image hash values, and its system runs a hash value check against every image sent within KIK, including those sent as part of private conversations.  When a user sends an

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 3
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   image with a hash value that matches a child exploitation hash value in the database, the

2   account is banned.  The Trust and Safety team at KIK receives a daily report of all such

3   hash matches.  It has a mandatory obligation to report these matches to the Royal

4   Canadian Mounted Police (RCMP).  With each report, KIK provides some or all of the

5   following information:

6   - Subscriber data associated with the reported user;

7   - Full conversation log that exists on the reporter's device, including timestamps

8     and Internet Protocol (IP) addresses, as well as text content;

9   - Image file(s) flagged as suspected child exploitation material and associated

10    hash value(s)

11   ## SUMMARY OF INVESTIGATION

12   11.     Homeland Security Investigations (HSI) routinely investigates child

13   exploitation leads received from RCMP.  These include leads resulting from the KIK

14   reports to the RCMP described above.  KIK reports to the RCMP all instances where its

15   security team has discovered child pornography exchanged or discussed via the KIK

16   application. Included in leads, there is normally profile data of the user, any text

17   transcript if applicable, and any images shared if any.

18   12.     When HSI receives a list of KIK users with Internet Protocol (IP) addresses

19   geolocating in the United States through this process, it passes those leads along to the

20   appropriate field office with responsibility for the geographic area associated with a given

21   IP address.

22   13.     In March 2019, HSI Seattle received information on the KIK user,

23   "NAUTIERIC" (the SUBJECT ACCOUNT).  According to the lead, the SUBJECT

24   ACCOUNT shared image file, with the hash value ending "3349" (the SUBJECT FILE)

25   on or about January 18, 2019.  SafePhoto identified the hash value of the SUBJECT FILE

26   as a known child exploitation image.  According to KIK, the SUBJECT ACCOUNT used

27   a Samsung Android cellular device, model SM-595OU, while accessing the KIK

28   application, and IP log data showed the user of the SUBJECT ACCOUNT accessed KIK

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 4
USAO #2019R

1  using multiple IP addresses.  The IP address used at the time the SUBJECT FILE was

2  uploaded was determined to belong to wireless phone provider T-Mobile.  IP logs also

3  showed that the user of the SUBJECT ACCOUNT used IP address 75.172.119.154 (the

4  "SUBJECT IP") to connect to KIK the day before the upload of the SUBJECT FILE,

5  January 17, 2019.  The SUBJECT IP belongs to ISP CenturyLink.

6      14.    The user of the SUBJECT ACCOUNT supplied KIK with the email

7  address nautieric@yahoo.com (the SUBJECT EMAIL). KIK also provided some

8  information regarding the SUBJECT ACCOUNT—to include profile name Eric Nauti,

9  and date of birth, XX/XX/1993.

10      15.    On or about April 3, 2019, HSI sent an administrative summons to

11  CenturyLink seeking subscriber information for the SUBJECT IP from January 17, 2019

12  at 00:45:16 UTC through January 17, 2019 at 07:24:44 UTC—the period during which

13  the user of the SUBJECT ACCOUNT connected to KIK from the SUBJECT IP. In

14  response, CenturyLink returned the following subscriber information associated with the

15  SUBJECT IP during that time:

16      IP Address: 75.172.119.154
17      User: mctigueedward
    Email: mctigue.e@gmail.com
18      Billing Telephone Number: 360-876-5736
    Billing Account ID: '6464
19      First Name: Edward
20      Last Name: McTigue

21
22      The location (address) of each account.
        1478 SW Joshua Way, Port Orchard, WA 98367

23
24      Length of service (including start date) and types of service utilized.
        December 24, 2018 – now Standalone DSL

25
26      Means and source of payment for such service (including any credit card or
    account number.
27          One checking account payment March 31, 2019 ending in 4995

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA  - 5
USAO #2019R

16.     Washington State Department of Licensing checks revealed driver's license issued to EDWARD WALTER MCTIGUE (the SUBJECT PERSON) at the address 1478 SW Joshua Way, Port Orchard, WA 98367 (the SUBJECT PREMISES). Social media checks by HSI identified EDWARD WALTER MCTIGUE is associated to and pictured at the SUBJECT PREMISES as recent as February 2019.

17.     Database searches for the username NAUTIERIC revealed an account with that username on Badoo, a dating-focused social network app available on mobile devices and the web. The publicly-available Badoo profile for NAUTIERIC listed an age of 25 and a location in Silverdale, WA. The photos posted to the Badoo profile for NAUTIERIC matched the driver's license photo for EDWARD WALTER MCTIGUE. Additionally, the image posted to the NAUTIERIC profile on Badoo matched the profile photo posted on EDWARD WALTER MCTIGUE's Facebook profile (edward.mctigue). According to EDWARD WALTER MCTIGUE's Facebook profile, he is an Information Technology Specialist with the United States Navy. Queries identified EDWARD WALTER MCTIGUE has an Instagram account emctigute93. EDWARD WALTER MCTIGUE posted a photo in a Navy uniform on Instagram under this account.

18.     A review of EDWARD WALTER MCTIGUE's Official Military Personnel File indicated he resides at 1478 SW Joshua Way, Port Orchard, WA 98367 with his wife and their minor daughter. Given the above, I believe it likely the SUBJECT PERSON is the user of the SUBJECT ACCOUNT. MCTIGUE's military records show that he is currently deployed and expected to return to western Washington in late June or early July 2019. His military records also show that MCTIGUE was not deployed in January 2019 when the SUBJECT FILE was uploaded to KIK using the SUBJECT ACCOUNT. At that time, MCTIGUE was assigned to the USS Nebraska (SSBN-739) Blue Crew physically located in western Washington.

19.     As outlined above, multiple sources of information indicate that the SUBJECT PERSON currently resides at the SUBJECT PREMISES and resided there on the date the SUBJECT FILE was uploaded to KIK. The IP address information provided

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 6
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

by KIK showed the SUBJECT ACCOUNT connected to KIK on January 17, 2019, from the SUBJECT IP and from a different IP address the following day—when the SUBJECT FILE was uploaded. I know from my training and experience that KIK users rarely, if ever, share their accounts. That is, once a KIK account is created, the same person who created it will continue to use it. As detailed above, it appears that the SUBJECT PERSON has a social media account with the same user name as the SUBJECT ACCOUNT. I therefore believe it is likely that the SUBJECT PERSON is the person who uploaded the SUBJECT FILE to KIK using the SUBJECT ACCOUNT.

20.     HSI Cyber Crimes Center (C3) determined that the hash value for the SUBJECT FILE provided by KIK is a known hash value—meaning a hash value associated with a child exploitation file previously seen by law enforcement. According to C3, the hash value of the SUBJECT FILE corresponded to an image depicting child sexual abuse material known to law enforcement. An image file with the same hash value as the SUBJECT FILE is on file with the HSI child exploitation imagery repository database. HSI provided NCIS with a copy of this image (the REPOSITORY FILE). As noted above, because the SUBJECT FILE and the REPOSITORY FILE have the same hash value, it is virtually impossible for these files not to be identical.

21.     Although I have not viewed the SUBJECT FILE, I viewed the REPOSITORY FILE obtained from C3 and describe it below:

> This is a color photograph depicting a prepubescent female wearing a black, white, and orange feline costume that exposes her face and bare shoulders. She is wearing a feline nose mask with an elastic band, which covers only her nose. She is performing oral sex on an adult male. Based on small stature, youthful appearance, and lack of breast development, I estimate the child is under the age of four.

22.     On or about June 14, 2019, I conducted surveillance at the SUBJECT PREMISES. The SUBJECT PREMISES had a driveway going uphill from SW Joshua Way. There were numerous trees around the SUBJECT PREMISES. I observed a blue sign with the numbers "1478" located on the southwest corner of the intersection of SW

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA  - 7
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   Joshua Way and the driveway.  The driveway lead to a one-story manufactured house
2   painted yellow with a door painted red. A wooden staircase led up to the red-painted
3   door.

**TECHNICAL BACKGROUND**

5     23. Based on my training and experience, when an individual communicates
6   through the Internet, the individual leaves an IP address which identifies the individual
7   user by account and ISP (as described above).  When an individual is using the Internet,
8   the individual's IP address is visible to administrators of websites they visit.  Further, the
9   individual's IP address is broadcast during most Internet file and information exchanges
10  that occur.

11    24. Based on my training and experience, I know that most ISPs provide only
12  one IP address for each residential subscription.  I also know that individuals often use
13  multiple digital devices within their home to access the Internet, including desktop and
14  laptop computers, tablets, and mobile phones.  A device called a router is used to connect
15  multiple digital devices to the Internet via the public IP address assigned (to the
16  subscriber) by the ISP.  A wireless router performs the functions of a router but also
17  includes the functions of a wireless access point, allowing (wireless equipped) digital
18  devices to connect to the Internet via radio waves, not cables.  Based on my training and
19  experience, today many residential Internet customers use a wireless router to create a
20  computer network within their homes where users can simultaneously access the Internet
21  (with the same public IP address) with multiple digital devices.

22    25. Based on my training and experience and information provided to me by
23  computer forensic agents, I know that data can quickly and easily be transferred from one
24  digital device to another digital device.  Data can be transferred from computers or other
25  digital devices to internal and/or external hard drives, tablets, mobile phones, and other
26  mobile devices via a USB cable or other wired connection.  Data can also be transferred
27  between computers and digital devices by copying data to small, portable data storage

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA  - 8
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   devices including USB (often referred to as "thumb") drives, memory cards (Compact
2   Flash, SD, microSD, etc.) and memory card readers, and optical discs (CDs/DVDs).

3       26.     As outlined above, residential Internet users can simultaneously access the
4   Internet in their homes with multiple digital devices.  Also explained above is how data
5   can quickly and easily be transferred from one digital device to another through the use
6   of wired connections (hard drives, tablets, mobile phones, etc.) and portable storage
7   devices (USB drives, memory cards, optical discs).  Therefore, a user could access the
8   Internet using their assigned public IP address, receive, transfer or download data, and
9   then transfer that data to other digital devices, which may or may not have been
10  connected to the Internet during the date and time of the specified transaction.

11      27.     Based on my training and experience, I have learned that the computer's
12  ability to store images and videos in digital form makes the computer itself an ideal
13  repository for child pornography.  The size of hard drives used in computers (and other
14  digital devices) has grown tremendously within the last several years.  Hard drives with
15  the capacity of four (4) terabytes (TB) are not uncommon.  These drives can store
16  thousands of images and videos at very high resolution.

17      28.     Based on my training and experience, and information provided to me by
18  other law enforcement officers, I know that people tend to use the same user names
19  across multiple accounts and email services.

20      29.     Based on my training and experience, collectors and distributors of child
21  pornography also use online resources to retrieve and store child pornography, including
22  services offered by companies such as Google, Yahoo, Apple, and Dropbox, among
23  others.  The online services allow a user to set up an account with a remote computing
24  service that provides email services and/or electronic storage of computer files in any
25  variety of formats.  A user can set up an online storage account from any computer with
26  access to the Internet.  Evidence of such online storage of child pornography is often
27  found on the user's computer.  Even in cases where online storage is used, however,
28  evidence of child pornography can be found on the user's computer in most cases.

30.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" and history files of the browser application used.  A forensic examiner often can recover evidence suggesting whether a computer contains wireless software, and when certain files under investigation were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

31.     Based on my training and experience, I have learned that producers of child pornography can produce image and video digital files from the average digital camera, mobile phone, or tablet.  These files can then be easily transferred from the mobile device to a computer or other digital device, using the various methods described above.  The digital files can then be stored, manipulated, transferred, or printed directly from a computer or other digital device.  Digital files can also be edited in ways similar to those by which a photograph may be altered; they can be lightened, darkened, cropped, or otherwise manipulated.  As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.  In addition, there is an added benefit to the child pornographer in that this method of production is a difficult trail for law enforcement to follow.

32.     As part of my training and experience, I have become familiar with the structure of the Internet, and I know that connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.   Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 10
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  from, other individuals; to conduct commercial transactions; and to communicate via

2  email.

3        33.    Based on my training and experience, I know that cellular mobile phones

4  (often referred to as "smart phones") have the capability to access the Internet and store

5  information, such as images and videos. As a result, an individual using a smart phone

6  can send, receive, and store files, including child pornography, without accessing a

7  personal computer or laptop. An individual using a smart phone can also easily connect

8  the device to a computer or other digital device, via a USB or similar cable, and transfer

9  data files from one digital device to another. Moreover, many media storage devices,

10  including smartphones and thumb drives, can easily be concealed and carried on an

11  individual's person and smartphones and/or mobile phones are also often carried on an

12  individual's person.

13        34.    As set forth herein and in Attachment B to this Affidavit, I seek permission

14  to search for and seize evidence, fruits, and instrumentalities of the above-referenced

15  crimes that might be found at the SUBJECT PREMISES or on the SUBJECT PERSON,

16  in whatever form they are found. It has been my experience that individuals involved in

17  child pornography often prefer to store images of child pornography in electronic form.

18  The ability to store images of child pornography in electronic form makes digital devices,

19  examples of which are enumerated in Attachment B to this Affidavit, an ideal repository

20  for child pornography because the images can be easily sent or received over the Internet.

21  As a result, one form in which these items may be found is as electronic evidence stored

22  on a digital device.

23        35.    Based upon my knowledge, experience, and training in child pornography

24  investigations, and the training and experience of other law enforcement officers with

25  whom I have had discussions, I know that there are certain characteristics common to

26  individuals who have a sexualized interest in children and depictions of children:

27        a.    They may receive sexual gratification, stimulation, and satisfaction from

28  contact with children; or from fantasies they may have viewing children engaged in

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 11
USAO #2019R

1  sexual activity or in sexually suggestive poses, such as in person, in photographs, or other
2  visual media; or from literature describing such activity.

3       b.    They may collect sexually explicit or suggestive materials in a variety of
4  media, including photographs, magazines, motion pictures, videotapes, books, slides,
5  and/or drawings or other visual media.  Such individuals often times use these materials
6  for their own sexual arousal and gratification.  Further, they may use these materials to
7  lower the inhibitions of children they are attempting to seduce, to arouse the selected
8  child partner, or to demonstrate the desired sexual acts.  These individuals may keep
9  records, to include names, contact information, and/or dates of these interactions, of the
10  children they have attempted to seduce, arouse, or with whom they have engaged in the
11  desired sexual acts.

12       c.    They often maintain any "hard copies" of child pornographic material that
13  is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence,
14  mailing lists, books, tape recordings, etc., in the privacy and security of their home or
15  some other secure location.  These individuals typically retain these "hard copies" of
16  child pornographic material for many years, as they are highly valued.

17       d.    Likewise, they often maintain their child pornography collections that are
18  in a digital or electronic format in a safe, secure and private environment, such as a
19  computer and surrounding area.  These collections are often maintained for several years
20  and are kept close by, often at the individual's residence or some otherwise easily
21  accessible location, to enable the owner to view the collection, which is valued highly.

22       e.    They also may correspond with and/or meet others to share information and
23  materials; rarely destroy correspondence from other child pornography
24  distributors/collectors; conceal such correspondence as they do their sexually explicit
25  material; and often maintain lists of names, addresses, and telephone numbers of
26  individuals with whom they have been in contact and who share the same interests in
27  child pornography.

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 12
USAO #2019R

f.      They generally prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.      E-mail itself provides a convenient means by which individuals can access a collection of child pornography from any computer, at any location with Internet access.  Such individuals therefore do not need to physically carry their collections with them but rather can access them electronically.   Furthermore, these collections can be stored on email "cloud" servers, which allow users to store a large amount of material at no cost, without leaving any physical evidence on the users' computer(s).

36.      In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification.  In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification.  I know that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person.  This evidence may include the files themselves, logs of account access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

37.      Given the above-stated facts and based on my knowledge, training and experience, along with my discussions with other law enforcement officers who investigate child exploitation crimes, I believe that the SUBJECT PERSON has a sexualized interest in children and depictions of children and that evidence of child

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 13
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  pornography is likely to be found on digital media devices, including mobile and/or

2  portable digital devices found at the SUBJECT PREMISES or on the SUBJECT

3  PERSON.

4       38.    Based on my training and experience, and that of computer forensic agents

5  that I work and collaborate with on a daily basis, I know that every type and kind of

6  information, data, record, sound or image can exist and be present as electronically stored

7  information (ESI) on any of a variety of computers, computer systems, digital devices,

8  and other electronic storage media.  I also know that electronic evidence can be moved

9  easily from one digital device to another.  As a result, I believe that electronic evidence

10  may be stored on any digital device present at the SUBJECT PREMISES or on the

11  SUBJECT PERSON.

12       39.    Based on my training and experience, and my consultation with computer

13  forensic agents who are familiar with searches of computers, I know that in some cases

14  the items set forth in Attachment B may take the form of files, documents, and other data

15  that is user-generated and found on a digital device.  In other cases, these items may take

16  the form of other types of data - including in some cases data generated automatically by

17  the devices themselves.

18       40.    Based on my training and experience, and my consultation with computer

19  forensic agents who are familiar with searches of computers, I believe that if digital

20  devices are found in the SUBJECT PREMISES or on the SUBJECT PERSON, there is

21  probable cause to believe that the items set forth in Attachment B will be stored in those

22  digital devices for a number of reasons, including but not limited to the following:

23       a.    Once created, ESI can be stored for years in very little space and at

24  little or no cost.  A great deal of ESI is created, and stored, moreover, even without a

25  conscious act on the part of the device operator.  For example, files that have been

26  viewed via the Internet are sometimes automatically downloaded into a temporary

27  Internet directory or "cache," without the knowledge of the device user.  The browser

28  often maintains a fixed amount of hard drive space devoted to these files, and the files are

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 14
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    only overwritten as they are replaced with more recently viewed Internet pages or if a

2    user takes affirmative steps to delete them.  This ESI may include relevant and significant

3    evidence regarding criminal activities, but also, and just as importantly, may include

4    evidence of the identity of the device user, and when and how the device was used.  Most

5    often, some affirmative action is necessary to delete ESI.  And even when such action has

6    been deliberately taken, ESI can often be recovered, months or even years later, using

7    forensic tools.

8         b.    Wholly apart from data created directly (or indirectly) by user generated

9    files, digital devices - in particular, a computer's internal hard drive - contain electronic

10   evidence of how a digital device has been used, what it has been used for, and who has

11   used it.  This evidence can take the form of operating system configurations, artifacts

12   from operating systems or application operations, file system data structures, and virtual

13   memory "swap" or paging files.  Computer users typically do not erase or delete this

14   evidence, because special software is typically required for that task.  However, it is

15   technically possible for a user to use such specialized software to delete this type of

16   information - and, the use of such special software may itself result in ESI that is relevant

17   to the criminal investigation.  In particular, to properly retrieve and analyze electronically

18   stored (computer) data, and to ensure accuracy and completeness of such data and to

19   prevent loss of the data either from accidental or programmed destruction, it is necessary

20   to conduct a forensic examination of the computers.  To effect such accuracy and

21   completeness, it may also be necessary to analyze not only data storage devices, but also

22   peripheral devices which may be interdependent, the software to operate them, and

23   related instruction manuals containing directions concerning operation of the computer

24   and software.

25                     **SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

26         41.   In addition, based on my training and experience and that of computer

27   forensic agents that I work and collaborate with on a daily basis, I know that in most

28   cases it is impossible to successfully conduct a complete, accurate, and reliable search for

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA  - 15
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    electronic evidence stored on a digital device during the physical search of a search site
2    for a number of reasons, including but not limited to the following:

3            a.    Technical Requirements:  Searching digital devices for criminal
4    evidence is a highly technical process requiring specific expertise and a properly
5    controlled environment.  The vast array of digital hardware and software available
6    requires even digital experts to specialize in particular systems and applications, so it is
7    difficult to know before a search which expert is qualified to analyze the particular
8    system(s) and electronic evidence found at a search site.  As a result, it is not always
9    possible to bring to the search site all of the necessary personnel, technical manuals, and
10   specialized equipment to conduct a thorough search of every possible digital
11   device/system present.  In addition, electronic evidence search protocols are exacting
12   scientific procedures designed to protect the integrity of the evidence and to recover even
13   hidden, erased, compressed, password-protected, or encrypted files.  Since ESI is
14   extremely vulnerable to inadvertent or intentional modification or destruction (both from
15   external sources or from destructive code embedded in the system such as a "booby
16   trap"), a controlled environment is often essential to ensure its complete and accurate
17   analysis.

18           b.    Volume of Evidence:  The volume of data stored on many digital
19   devices is typically so large that it is impossible to search for criminal evidence in a
20   reasonable period of time during the execution of the physical search of a search site.  A
21   single megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A
22   single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000
23   double-spaced pages of text. Computer hard drives are now being sold for personal
24   computers capable of storing up to two terabytes (2,000 gigabytes of data.)  Additionally,
25   this data may be stored in a variety of formats or may be encrypted (several new
26   commercially available operating systems provide for automatic encryption of data upon
27   shutdown of the computer).

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 16
USAO #2019R

1    c.    Search Techniques:  Searching the ESI for the items described in

2  Attachment B may require a range of data analysis techniques.  In some cases, it is

3  possible for agents and analysts to conduct carefully targeted searches that can locate

4  evidence without requiring a time-consuming manual search through unrelated materials

5  that may be commingled with criminal evidence.   In other cases, however, such

6  techniques may not yield the evidence described in the warrant, and law enforcement

7  personnel with appropriate expertise may need to conduct more extensive searches, such

8  as scanning areas of the disk not allocated to listed files, or peruse every file briefly to

9  determine whether it falls within the scope of the warrant.

10    42.    In this particular case, the government anticipates the use of a hash value

11  library to exclude normal operating system files that do not need to be searched, which

12  will facilitate the search for evidence that does come within the items described in

13  Attachment B.  Further, the government anticipates the use of hash values and known file

14  filters to assist the digital forensics examiners/agents in identifying known and or

15  suspected child pornography image files.  Use of these tools will allow for the quick

16  identification of evidentiary files but also assist in the filtering of normal system files that

17  would have no bearing on the case.

18    43.    Collectors of child pornography are known to transport their child

19  pornography collections, which are often stored on mobile and/or portable digital media

20  devices, with them throughout the day.  In particular, I have consulted with law

21  enforcement officers with experience investigating child exploitation related crimes, and

22  have learned that collectors of child pornography have been found to transport their

23  collections stored on mobile and/or portable devices 1) within pockets on their person,

24  and 2) inside bags/backpacks that they carry, and/or 3) within compartments located

25  inside their vehicle.

26    44.    Because multiple people share the SUBJECT PREMISES and in order to

27  protect the privacy of individuals who may not be suspects of criminal activity, executing

28  agents will attempt to determine onsite which resident or residents own or have access to

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 17
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   a given digital device.  If executing agents can reasonably determine that the SUBJECT

2   PERSON does not own or have access to a particular device, they will not seize or search

3   that digital device.

4        45.     However, if agents conducting the search nonetheless determine that it is

5   probable that the things described in this warrant could be found on any computer(s) or

6   digital device(s) in the residence, this application seeks permission to conduct an onsite

7   search of those computers and digital devices as well, using forensic software, to

8   determine if any child pornography is present.  If, as a result of this onsite search, there is

9   no child pornography present on those computers or digital devices, then they will not be

10  searched further and will not be seized.  However, agents will be authorized to seize any

11  computer or digital device owned or used by SUBJECT PERSON for off-site forensic

12  review, if an onsite forensic review is not possible or feasible.

13       46.     In accordance with the information in this Affidavit, law enforcement

14  personnel will execute the search of digital devices seized pursuant to this warrant as

15  follows:

16            a.     Upon securing the search site, the search team will conduct an initial

17  review of any digital devices/systems to determine whether the ESI contained therein can

18  be searched and/or duplicated on site in a reasonable amount of time and without

19  jeopardizing the ability to accurately preserve the data.

20            b.     If, based on their training and experience, and the resources

21  available to them at the search site, the search team determines it is not practical to make

22  an on-site search, or to make an on-site copy of the ESI within a reasonable amount of

23  time and without jeopardizing the ability to accurately preserve the data, then the digital

24  devices will be seized and transported to an appropriate law enforcement laboratory for

25  review and to be forensically copied ("imaged"), as appropriate.

26            c.     In order to examine the ESI in a forensically sound manner, law

27  enforcement personnel with appropriate expertise will produce a complete forensic

28  image, if possible and appropriate, of any digital device that is found to contain data or

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 18
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    items that fall within the scope of Attachment B of this Affidavit.  In addition,

2    appropriately trained personnel may search for and attempt to recover deleted, hidden, or

3    encrypted data to determine whether the data fall within the list of items to be seized

4    pursuant to the warrant.  In order to search fully for the items identified in the warrant,

5    law enforcement personnel, which may include investigative agents, may then examine

6    all of the data contained in the forensic image/s and/or on the digital devices to view their

7    precise contents and determine whether the data fall within the list of items to be seized

8    pursuant to the warrant.

9         d.    The search techniques that will be used will be only those

10   methodologies, techniques and protocols as may reasonably be expected to find, identify,

11   segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

12   this Affidavit.

13        e.    If, after conducting its examination, law enforcement personnel

14   determine that any digital device is an instrumentality of the criminal offenses referenced

15   above, the government may retain that device during the pendency of the case as

16   necessary to, among other things, preserve the instrumentality evidence for trial, ensure

17   the chain of custody, and litigate the issue of forfeiture.  If law enforcement personnel

18   determine that a device was not an instrumentality of the criminal offenses referenced

19   above, it shall be returned to the person/entity from whom it was seized.

20   47.   In order to search for ESI that falls within the list of items to be seized

21   pursuant to Attachment B to this Affidavit, law enforcement personnel will seize and

22   search the following items (heretofore and hereinafter referred to as "digital devices"),

23   subject to the procedures set forth above:

24        a.    Any digital device capable of being used to commit, further, or store

25   evidence of the offense(s) listed above;

26        b.    Any digital device used to facilitate the transmission, creation,

27   display, encoding, or storage of data, including word processing equipment, modems,

28   docking stations, monitors, printers, cameras, encryption devices, and optical scanners;

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 19
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1         c.     Any magnetic, electronic, or optical storage device capable of

2 storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or

3 memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives,

4 camera memory cards, media cards, electronic notebooks, and personal digital assistants;

5         d.     Any documentation, operating logs and reference manuals regarding

6 the operation of the digital device, or software;

7         e.     Any applications, utility programs, compilers, interpreters, and other

8 software used to facilitate direct or indirect communication with the device hardware, or

9 ESI to be searched;

10         f.     Any physical keys, encryption devices, dongles and similar physical

11 items that are necessary to gain access to the digital device, or ESI; and

12         g.     Any passwords, password files, test keys, encryption codes or other

13 information necessary to access the digital device or ESI.

## GENUINE RISKS OF DESTRUCTION OF EVIDENCE

15      48.     Any other means of obtaining the necessary evidence to prove the elements

16 of computer/Internet-related crimes, for example, a consent search, could result in an

17 unacceptable risk of the loss/destruction of the evidence sought. If agents pursued a

18 consent-based interview of and/or a consent-based search of digital media belonging to

19 the SUBJECT PERSON at the SUBJECT PREMISES, he could rightfully refuse to give

20 consent and subsequently destroy all evidence of the crime before agents could return

21 with a search warrant.  Based on my knowledge, training and experience, the only

22 effective means of collecting and preserving the required evidence in this case is through

23 a search warrant.

24 //

25 //

26 //

27

28

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA  - 20
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**CONCLUSION**

49.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) are located at the SUBJECT PREMISES or on the SUBJECT PERSON, as more fully described in Attachment A to this Affidavit, as well as on and in any digital devices found therein.  I therefore request that the court issue a warrant authorizing a search of the SUBJECT PREMISES and on the SUBJECT PERSON for the items more fully described in Attachment B.

BYRON E. GARCIA,
Affiant, Special Agent
Department of the Navy
Naval Criminal Investigative Service

Subscribed and sworn to before me this 28th day of June, 2019.

THERESA L. FRICKE
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT BYRON E. GARCIA - 21
USAO #2019R

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# ATTACHMENT A

## Description of the Property to be Searched

The physical address of the SUBJECT PREMISES is 1478 Southwest Joshua Way, Port Orchard, Washington 98367.  The SUBJECT PREMISES is more fully described as the property containing a one-story manufactured house painted yellow. There is a door painted red with an oval window on the north side of the house. A wooden staircase leads up to the red front door. There is a detached carport located northwest of the manufactured house. There is a blue sign with the numbers 1478 located on the southwest corner of the intersection of SW Joshua Way and the driveway.  The driveway goes southwest uphill from SW Joshua Way. There are numerous trees on the SUBJECT PREMISES.

The search is to include all rooms, attics, basements, and all other parts therein, any garages, outbuildings, or storage rooms, attached or detached, and any digital device(s) found therein.

ATTACHMENTS - 1
USAO #2019R00567

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The person to be searched, EDWARD WALTER MCTIGUE, is a Caucasian male
2  born on XX/XX/1993.



UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed), photocopies or other photographic form, and electrical, electronic, and magnetic form (such as CDs, DVDs, smart cards, thumb drives, camera memory cards, electronic notebooks, or any other storage medium), that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 2252(a)(2) (Receipt or Distribution of Child Pornography) and 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) which may be found at the SUBJECT PREMISES or on the SUBJECT PERSON.

1.      Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media.

2.      Evidence of any associated email accounts, instant message accounts or other communications or digital storage such as cloud accounts.

3.      Letters, e-mail, text messages, and other correspondence identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by mail or by computer;

4.      All invoices, purchase agreements, catalogs, canceled checks, money order receipts, credit card statements or other documents pertaining to the transportation or purchasing of images of minors engaged in sexually explicit conduct;

5.      Any and all address books, names, lists of names, telephone numbers, and addresses of individuals engaged in the transfer, exchange, or sale of child pornography;

6.      Any and all address books, names, lists of names, telephone numbers, and addresses of minors;

7.      Any and all diaries, notebooks, notes, non-pornographic pictures of children, and any other records reflecting personal contact or other activities with minors.

8.      Any non-digital recording devices and non-digital media capable of storing images and videos.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9.      Digital devices and/or their components, which include, but are not limited to:

a.      Any digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above, including but not limited to computers, digital cameras, and smart phones;

b.      Any digital devices used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, encryption devices, and optical scanners;

c.      Any magnetic, electronic, or optical storage device capable of storing data, such as disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, printer or memory buffers, smart cards, PC cards, memory sticks, flash drives, thumb drives, camera memory cards, media cards, electronic notebooks, and personal digital assistants;

d.      Any documentation, operating logs and reference manuals regarding the operation of the digital device or software;

e.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f.      Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.      Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data;

10.     Evidence of who used, owned or controlled any seized digital device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

11.     Evidence of malware that would allow others to control any seized digital device(s) such as viruses, Trojan horses, and other forms of malicious software, as well

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   as evidence of the presence or absence of security software designed to detect malware;

2   as well as evidence of the lack of such malware;

3        12.    Evidence of the attachment to the digital device(s) of other storage devices

4   or similar containers for electronic evidence;

5        13.    Evidence of counter-forensic programs (and associated data) that are

6   designed to eliminate data from a digital device;

7        14.    Evidence of times the digital device(s) was used;

8        15.    Any other ESI from the digital device(s) necessary to understand how the

9   digital device was used, the purpose of its use, who used it, and when.

10

11 **The seizure of digital devices and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such**

12 **digital devices constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting off-site examinations of their contents for**

13 **evidence, instrumentalities, or fruits of the aforementioned crimes.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENTS - 6
USAO #2019R00567

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970